UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMIE GOMEZ | : |
| Petitioner, | : |
| v. | : NO. 3:04CV450(MRK) |
| WARDEN CARTER, | : |
| Respondent. | : |

## RULING

Currently pending before the Court is Jamie Gomez's Amended Petition for Habeas Corpus [doc. # 16]. The facts and procedural history of this case have been thoroughly discussed by the Connecticut Supreme Court, *see Connecticut v. Booth*, 250 Conn. 611, 613-20 (1999), and therefore will not be repeated here. Suffice it to say that Mr. Gomez's claims arise from his state court trial, which resulted in his conviction for murder under Connecticut General Statute § 53a-54a, and conspiracy to commit murder under §§ 53a-54a and 53a-48.

Mr. Gomez raises two Due Process claims in his Petition. First, he claims that he was erroneously convicted of murder since the State did not put forth sufficient evidence to prove the Mr. Gomez himself killed the victim rather than merely act as an accomplice. Second, he asserts that the trial judge should have granted his motions to sever that he made prior to and during the trial, thereby allowing him to be tried separately from his two co-defendants.[1] For the reasons discussed

---

[1] In his Memorandum in Opposition to the Petition for Habeas Corpus ("Memorandum in Opposition") [doc. # 23], Warden Carter questions whether Mr. Gomez is also raising, for the first time, a claim that he lacked notice of the charges for which he was convicted. If Mr. Gomez were raising such an unexhausted claim, the Court would lack jurisdiction to consider that claim, and, at the very least, the Court would be required to stay this case pending Mr. Gomez exhausting all of his claims in state court. *See Rhines v. Weber*, 544 U.S. 269, 278-79 (2005). However, during a telephonic conference held on the record on March 29, 2007, Mr. Gomez's counsel clarified that Mr.

below, the Court finds that Mr. Gomez's claims lack merit and therefore the Court will dismiss Mr. Gomez's Amended Petition for Habeas Corpus [doc. # 16].

**I.**

Under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, § 104, 110 Stat. 1214, 1219, a federal habeas court may not grant "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court" unless the Court is convinced that the state court's "decision . . . was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d); *see also Carey v. Musladin*, 127 S.Ct. 649, 652-53 (2006) (same); *Hoi Man Yung v. Walker*, 468 F.3d 169, 176 (2d Cir. 2006) (same).

"A decision is 'contrary to' clearly established federal law if it contradicts a decision by the Supreme Court or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts." *Hoi Man Yung*, 468 F.3d at 176 (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Here, Mr. Gomez does not cite a U.S. Supreme Court case that he claims that the Connecticut Supreme Court contradicted or decided differently on materially indistinguishable facts. Therefore, the Court presumes that Mr. Gomez attacks his conviction under AEDPA's unreasonableness prong.

The Second Circuit has instructed that

> [a] decision involves an unreasonable application of clearly established federal law if the state court correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case, or refuses to extend a legal

---

Gomez was not, in fact, raising a notice claim in his Petition for Habeas Corpus [doc. # 16] or in his Memorandum in Support of his Petition for Habeas Corpus ("Memorandum in Support") [doc. # 20].

2

principle that the Supreme Court has clearly established to a new situation in which it should govern.

*Id.* The *Hoi Man Yung* court emphasized that a "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court applied clearly established federal law erroneously or incorrectly." *Id.* (citing *Williams*, 529 U.S. at 411).

## II.

Mr. Gomez first argues that his conviction should be overturned because there is no evidence that he committed the murder for which he was convicted; rather, according to Mr. Gomez, he was convicted of murder merely on evidence that he acted as an accomplice. *See* Mem. in Supp. [doc. # 20] at 5. The Second Circuit has held that a petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Dixon v. Miller*, 293 F.3d 74, 78 (2d Cir. 2002).

The Connecticut Supreme Court accurately stated that, under Connecticut law, one may be found guilty for murder even if the individual acted only as an accomplice, although the individual "must possess the specific intent to cause the death of the victim." *Booth*, 250 Conn. at 655 (internal quotation marks omitted). The court then evaluated all of the evidence presented at trial and concluded that "[o]n the basis of the evidence presented and the inferences reasonably drawn therefrom, the jury reasonably could have concluded that [Mr.] Gomez had intent to cause [the victim's] death." *Id.* at 656. Mr. Gomez cites no U.S. Supreme Court precedent that he claims was applied unreasonably by the Connecticut Supreme Court and this Court concurs with the Connecticut Supreme Court that there was sufficient evidence adduced at trial for Mr. Gomez to be found guilty of murder under Connecticut law. *See id.* at 656-58.

Mr. Gomez next asserts that his conviction should be overturned because his trial was improperly joined to those of his co-defendants and that his trial was prejudiced by the "rub-off" or "spillover" effect from the introduction of evidence against his co-defendants.² *See* Memo. in Supp. [doc. # 20] at 5-11. Specifically, Mr. Gomez asserts that the admission of inculpatory statements made by one of his co-defendants as well as the admission of that co-defendant's prior convictions and appurtenant sentences was substantially prejudicial to his own defense. In support of his severance arguments, Mr. Gomez cites the dissenting opinion of the Connecticut Supreme Court. *See* Mem. in Opp. [doc. # 20] (quoting extensively *Booth*, 250 Conn. at 663-72 (Berdon, J., dissenting)). Of course, whether this Court finds the majority or dissenting opinion of the Connecticut Supreme Court more persuasive is not the standard at this stage. The Court emphasizes again that, under AEDPA, the Court may only overturn the State court's opinion if the court *unreasonably* applied the governing rule of law.

The relevant governing law is found in *United State v. Lane*, 474 U.S. 438 (1986), in which the U.S. Supreme Court stated that "an error involving misjoinder . . . requires reversal only if the misjoinder results in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* at 449. The Connecticut Supreme Court carefully considered the evidence that Mr. Gomez claims was prejudicial. It noted that "[t]he jury was instructed not to consider the evidence of [the co-defendant's] convictions and [the co-defendant's] statements in

---

² Despite the suggestion by Warden Carter that Mr. Gomez is additionally claiming that he was prejudiced because his defense strategy was antagonistic to those of his co-defendants, *see* Mem. in Opp. [doc. # 23] at 30, Mr. Gomez does not appear to raise this argument in either his Amended Petition for Habeas Corpus [doc. # 16] or his Memorandum in Support [doc. # 20]. In addition, the Connecticut Supreme Court attributed that argument only to Mr. Gomez's co-defendant, Mr. Brown. *See Booth*, 250 Conn. at 623-24. Therefore, this Court will not consider that claim.

deciding the case against Gomez, save for [one statement]. Moreover, the trial court told the jury on numerous occasions to 'decide the case against each of these three defendants separately.'" *Booth*, 250 Conn. at 632. The court found that there was "no indication that the jurors could not follow these instructions" and therefore, Mr. Gomez "failed to establish that he was prejudiced by the spillover effect, if any, from the admission of [the] statements . . . or the admission of [the] prior convictions." *Id.*

Mr. Gomez argues that the limiting instructions given by the trial judge were so voluminous and confusing that they were ineffective. The Connecticut Supreme Court disagreed, finding that Mr. Gomez "failed to establish that the jury could not follow the trial court's cautionary instructions, and that he actually was prejudiced" by the admissions of the co-defendant's statements and prior convictions. *Id.* at 633. The court also noted that the state "produced a substantial amount of evidence implicating Gomez in the crime." *Id.* This Court concludes that the state court's holding that the admission of the contested evidence was not substantially prejudicial and that it did not influence the jury's verdict was not an unreasonable application of Federal law.

### III.

In sum, because the Court finds that the Connecticut Supreme Court did not unreasonably apply governing Federal law, the Court must DISMISS Mr. Gomez's Amended Petition for Habeas Corpus [doc. # 16]. **The Clerk is directed to close the file.**

IT IS SO ORDERED.

/s/      Mark R. Kravitz
United States District Judge

Dated at New Haven, Connecticut: **March 29, 2007.**